STATE EX REL. ZILISCH and others, Respondents, vs. AUER, School District Clerk, Appellant.

*October 13—November 7, 1928.*

286

For the appellant there were briefs by *Olin & Butler*, attorneys, and *R. M. Rieser*, of counsel, and oral argument by *Mr. Rieser* and *Mr. B. H. Stebbins*, all of Madison.

For the respondents there was a brief by *Skinner & Thauer* of Watertown and *Bogue & Sanderson* of Portage, attorneys, and *Walter H. Bender* of Milwaukee, of counsel; and the cause was argued orally by *David H. Bogue, T. H. Sanderson, Walter H. Bender, Nicholas Thauer,* and *Wallace Thauer*.

The following opinion was filed November 7, 1928:

STEVENS, J. (1) *Motion to dismiss appeal.* The relators moved to dismiss the appeal on two grounds: *First.* That the "opinion and decision" of the trial court did not constitute an appealable order. The relators concede that an order denying a motion to quash is appealable, but they insist that this is not such an order, but a mere direction that such order should be entered later.

In determining whether any particular form of judicial action is appealable, "it is not the form of the determination but the nature of the adjudication that is to be considered." *Will of Jansen,* 181 Wis. 83, 85, 193 N. W. 972. In holding that a similar "opinion and decision" of the county court of Douglas county was appealable this court said: "It is its substance and nature, rather than the name given to the

proceeding either by court or parties, that must be the criterion in determining the question of appealability." *Will of Pattison,* 190 Wis. 289, 296, 207 N. W. 292.

Considering the nature and substance of the trial court's decision it is clear that it did constitute an appealable order. It determined that sec. 40.85 was constitutional and valid; that the alternative writ was properly issued; that the motion to quash should be denied, and that the peremptory writ should issue, if a return is not filed within ten days. Both parties treated this "opinion and decision" as an order disposing of the rights of the parties. The relators had judgment entered by the clerk without further order or direction of the court, despite the fact that the clerk had no power to enter such judgment without an order of the court. If this "opinion and decision" did not constitute such an order, the judgment was entered without authority.

*Second.* The motion to dismiss is also based on the ground that, at the time this appeal was taken in the name of Otto Auer as school district clerk, he had ceased to be the clerk of the district.

This court has jurisdiction of the subject matter involved in this appeal. The appeal was one that was authorized by statute to be taken from the trial court. The record was duly filed in this court. The defendant Auer was not the real party in interest. The real party in interest was the school district as a whole which had authorized the taking of this appeal at its annual meeting. The defendant Auer was made party defendant solely in his official representative capacity because he had custody of the appeal papers which it was sought to have transmitted to the county superintendent.

While this case was pending in this court on appeal the relators served a supplemental case. They also appeared and opposed a motion to advance the cause for an early argument and stipulated in open court that the question presented on this appeal should be confined to the constitutional-

ity of sec. 40.85 of the Statutes, without making objection to the jurisdiction of this court by motion to dismiss.

Under the provisions of sub. (1) of sec. 269.51 of the Statutes by participating in such proceedings before making this motion to dismiss, the relators' waived the objection that the appeal was not taken in the name of the person who occupied the office of clerk of the school district at the time of the appeal. Pursuant to the provisions of this section the motion to substitute the name of the present clerk for that of Mr. Auer is granted without terms.

The motion to dismiss the appeal is denied.

(2) The fundamental question presented by the case on its merits is whether sec. 40.85 of the Statutes is in conflict with the mandate of the constitution of Wisconsin that "The legislature shall provide by law for the establishment of district schools, which shall be as nearly uniform as practicable." Sec. 3, art. X.

The problem presented is whether the uniformity required by this section relates to the method of establishing school districts or to the schools maintained therein after districts have been established. If the uniformity relates to the method of establishment, we do not see how this statute can be sustained. On the other hand, if the requirement of uniformity applies only to the schools that are maintained in districts after they are created, the statute is a valid legislative enactment.

It is significant that this constitutional provision applies to "the establishment of *district schools*,"—not to the establishment of *school districts*. "Induction into the family of local governments is quite a different thing from exercising the functions of such government after having been thus inducted. The one involves action prior to reaching the system, the other implies action after becoming a constituent part of it." *Chicago & N. W. R. Co. v. Langlade County*, 56 Wis. 614, 623, 14 N. W. 844.

An examination of the debates in the conventions that

framed our present constitution and the constitution of 1846 (which contained a similar provision) discloses that the members of those conventions, when they were framing the article relating to schools, were concerned, not with the method of forming school districts, but with the character of instruction that should be given in those schools after the districts were formed,—with the training that these schools should give to the future citizens of Wisconsin.

Viewing the terms of this constitutional provision in the light of its express terms as well as of the purpose which actuated those who drafted it, we conclude that the requirement as to uniformity applies to the districts after they are formed,—to the character of the instruction given,—rather than to the means by which they are established and their boundaries fixed.

This conclusion necessarily means that *State ex rel. Brown v. Haney,* 190 Wis. 285, 209 N. W. 591, must be overruled so far as it holds that the constitutional requirement as to uniformity applies to the creation of school districts. In the decision of that case in the trial court and in its presentation in this court, it was assumed by all who participated in that case that the rule as to uniformity applied to the creation of a school district. The question here presented was not discussed in the argument of that case. If this provision of the constitution could be given the construction tacitly given it, we cannot see that the court could come to any other conclusion than the one reached in that case. But the court is convinced that that decision was based on an erroneous construction of this section of the fundamental law of the state. The court therefore welcomes this opportunity to give this constitutional mandate the construction that is in accord with its express language and with the purpose of its framers. This court is, and ever should be, "ready at all times to subordinate any possible, though unjustifiable, pride of opinion

to a justifiable pride in trying to decide rightly." *State ex rel. Ekern v. Milwaukee,* 190 Wis. 633, 635, 209 N. W. 860.

(3) The act does not illegally delegate legislative power. "The formation of school districts . . . is not a direct legislative function. . . . From the very beginning of state government the power to form school districts has been conferred upon town boards—official bodies which are nearest to those who are interested in the formation of school districts. The legislature has not attempted to set up any required standard or to make the action of the town board dependent upon the existence of any facts or circumstances. The town board has been permitted to exercise its discretion and form school districts that will in its best judgment promote the cause of education." *State ex rel. Horton v. Brechler,* 185 Wis. 599, 605, 202 N. W. 144.

The constitutional mandate that "the legislature shall provide by law" is met by a law that provides fully for the establishment of new districts or for changing the boundaries of established districts whenever certain facts are found to exist, among which facts is the will of the people residing within such district that such change shall be made.

The legislature cannot delegate the power "to declare whether or not there shall be a law; to determine the general purpose or policy to be achieved by the law; to fix the limits within which the law shall operate." *State ex rel. Wisconsin Inspection Bureau v. Whitman,* 196 Wis. 472, 220 N. W. 929, 941. But "it can make a law to become operative on the happening of a certain contingency or on the ascertainment of a fact upon which the law makes or intends to make its own action depend." *State ex rel. Van Alstine v. Frear,* 142 Wis. 320, 325, 125 N. W. 961. This has been the settled law of Wisconsin for more than half a century. *State ex rel. Att'y Gen. v. O'Neill,* 24 Wis. 149, 153; *Smith v. Janesville,* 26 Wis. 291, 294.

"A law otherwise unobjectionable is not invalid simply because power is given to some local officials or body of electors to determine the existence of a fact upon which it shall go into effect in the given locality, if the law itself is a complete law upon the statute books. This is not the delegation of power to make a law, but simply the delegation of power to determine or ascertain some fact upon which the action of the law which is complete in itself is to depend." *Adams v. Beloit,* 105 Wis. 363, 368, 369, 81 N. W. 869.

This rule "is grounded upon the proposition that the act was a completed piece of legislation when passed by the legislature and was a complete law when signed by the governor, but nevertheless a law which would not become operative unless a future contingency happened, to wit, that it received the sanction of a majority of the popular vote." *State ex rel. Van Alstine v. Frear,* 142 Wis. 320, 328, 125 N. W. 961.

The only thing that is left to the people under sec. 40.85 of the Statutes is to determine whether they will avail themselves of the provisions of this law. The will of the people residing within any school district can be expressed through the instrumentality of a petition as well as through ballots cast at an election. The petition is the method quite commonly adopted to determine the will of the people in similar cases in other jurisdictions. *Perrizo v. Kesler,* 93 Mich. 280, 283, 53 N. W. 391; *Mooney v. Board of Supervisors,* 2 Cal. App. 65, 83 Pac. 165; *Bourland v. Snyder,* 224 Ill. 478, 79 N. E. 568, 569. By providing for a petition signed by at least seventy-five per cent. of the electors in the district to be affected, "the legislature has provided a means by which the will of a majority of the qualified electors may be ascertained." *Stephens v. Jones,* 24 S. Dak. 97, 101, 123 N. W. 705, 707.

As has been stated, the only power given the electors is that of expressing their will that the law shall become effective in their own local area. They have neither the power

to compel the levying of taxes, as in *State ex rel. Carey v. Ballard*, 158 Wis. 251, 148 N. W. 1090, nor the power to determine what use their neighbors may make of their own property, as in *State ex rel. Nehrbass v. Harper*, 162 Wis. 589, 156 N. W. 941.

As is determined in *Incorporation of the Village of Chenequa, ante*, p. 163, 221 N. W. 856 (decided herewith), when any community desires to exercise its right of local self-government by separating its area from the local governmental unit of which it has been a part, the parent municipality has no right to stay the progress of its seceding child.

(4) Sec. 40.85 of the Statutes does not deny equal protection of the laws or due process of law when it authorizes changes in the boundaries of school districts. Changing the boundaries of a school district "is not a taking of the property, nor does it deprive any person of his property." *Taggart v. Claypool*, 145 Ind. 590, 44 N. E. 18, 32 L. R. A. 586, 588. "The school districts of the state are governmental agencies established by legislative authority to perform the public duty of educating the children of the state. The powers given them are granted solely for the purpose of enabling them to perform this public duty. As governmental agencies they are always under the control of the legislature, which may modify or abrogate their powers and privileges to any extent that it may see fit. Their boundaries or territorial jurisdictions may be enlarged, diminished, or abolished in such manner and through such instrumentalities as the legislature may prescribe." *Kramer v. Renville County*, 144 Minn. 195, 197, 175 N. W. 101, 102.

"Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be intrusted to them. . . . The state, therefore, at its pleasure, may . . . expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and

destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the constitution of the United States. Although the inhabitants and property owners may, by such changes, suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right, by contract or otherwise, in the unaltered or continued existence of the corporation or its powers, and there is nothing in the federal constitution which protects them from these injurious consequences. The power is in the state, and those who legislate for the state are alone responsible for any unjust or oppressive exercise of it." *Hunter v. Pittsburgh,* 207 U. S. 161, 178, 179, 28 Sup. Ct. 40, 52 Lawy. Ed. 151, 159.

Whether the boundaries of a local governmental unit like a city or a school district should be changed "is not a question of law or fact for judicial determination, but purely a question of policy, to be determined by the legislative department." *Whittaker v. Venice,* 150 Ill. 195, 201, 37 N. E. 240, 241. The policy outlined in sec. 40.85 of the Statutes presents a question of political expediency for the legislative department of our government. If this section or the law as it existed before this statute was enacted works an injustice to any of the citizens of the state, their forum of relief is the legislature, not the courts. The courts "have nothing to do with the policy, wisdom, justice, or fairness of the act under consideration; those questions are for the consideration of those to whom the state has intrusted its legislative power, and their determination of them is not subject to review or criticism by this court." *Hunter v. Pittsburgh,* 207 U. S. 161, 176, 28 Sup. Ct. 40, 52 Lawy. Ed. 151, 158.

*By the Court.*—Order affirmed.

A motion for a rehearing was denied, with $25 costs, on January 23, 1929, and the following memorandum was filed:

PER CURIAM. After the time for filing and serving briefs on motion for rehearing had expired, a brief *amicus curiæ* was filed. No application for leave to file this brief was made. It appears from the statement contained in the briefs of the opposite party that the brief was not served. We are, however, informed that failure to serve the brief was due to inadvertence of counsel, who supposed the brief had been served. The filing of briefs *amicus curiæ* without first obtaining leave of the court is irregular and contrary to the rules and practice of this court. Briefs *amicus curiæ* will not hereafter be received or considered unless leave to serve and file be first granted. The brief filed and the reply thereto will be stricken from the files.

It is so ordered.